## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JEROME DUNBAR,
      Plaintiff,

      v.

CHIEF JUDGE HONORABLE WILLIAM J.
LAVERY, et al.,
      Defendants.

CIVIL ACTION NO.
3:05cv1233 (SRU)

## RULING AND ORDER

Jerome Dunbar, proceeding *pro se* and *in forma pauperis*, has sued ten state appellate

court judges in their individual and official capacities.  Alleging violations of his constitutional

rights under the First, Fifth, and Fourteenth Amendments, Dunbar seeks a declaratory judgment

and has moved for an *ex parte* temporary restraining order, preliminary injunction, and

permanent injunction.  Dunbar also seeks one million dollars in punitive damages.

## I.      Background

The following facts are taken from Dunbar's Amended Complaint (doc. # 8), the

Appendix to the Amended Complaint (doc. # 9), and the Amended Motion for an *ex parte*

temporary restraining order, preliminary injunction, and permanent injunction (doc. # 10).

The case arises out of a landlord-tenant summary process action brought in Connecticut

housing court.[1]  State Street Bank and Trust Company brought that action (docket no. NHSP-

---

[1] Chapter 832 of Title 47a of the Connecticut General Statutes prescribes the
requirements for summary process, a special statutory proceeding designed to provide an
expeditious remedy to a landlord seeking to recover possession from a tenant.  *See, e.g.*, *Federal
Home Loan Mortgage Corp. v. Van Sickle*, 726 A.2d 600, 603 (Conn. App. Ct. 1999).  Apart
from the action that gave rise to this lawsuit, Dunbar appears to have previous experience with
summary process execution or eviction.  His pleadings reference a separate 2001 summary
process proceeding which appears to have resulted in his eviction.  Amend. Compl. ¶ 51.

074782) against Dunbar in April 2003 in order to regain property at 282 West Ivy Street in New Haven, Connecticut.  Throughout the summary process proceeding, Dunbar filed various appeals, motions for reconsideration, and petitions for certiorari, some of which had the effect of automatically staying the execution.  He has also filed a complaint with the Judicial Review Board.  Although Dunbar's federal lawsuit is focused on a particular order by the appellate court, further background on the underlying action provides context to Dunbar's claims.

On July 13, 2004, Dunbar filed various motions or appeals "relating to errors of the trial court and associated challenges to trial court orders."  Amend. Compl. ¶ 30.  The trial court denied Dunbar's motions and ruled that the case would not be stayed.  *Id.*  A summary process execution for possession (eviction) was issued that same day, but State Street Bank and Trust Company did not take possession of the property.  *Id.* ¶¶ 30-31.  On January 12, 2005, a second execution was issued.  *Id.* at ¶ 34.

On March 3, 2005, the housing court terminated all future stays of execution in Dunbar's summary process proceeding.  *Id.* at ¶ 38.  Dunbar then filed a petition for a writ of error with the Connecticut Supreme Court, which transferred the petition to the appellate court where it was dismissed.  *Id.* at ¶ 38.

On May 16, 2005, the appellate court granted State Street Bank and Trust Company's motion for sanctions and dismissed Dunbar's latest appeal.  *Id.* at ¶ 42.  The appellate court's order is the focus of the case at bar.  That order provides:

> [T]he appeal is dismissed.  It is further ordered that [Dunbar] is prohibited from filing any further motions or appeals with the appellate court concerning the summary process action, SPNH-074782, as to 282 West Ivy Street, New Haven, Connecticut.  The trial court is directed to refuse any further appeals by [Dunbar] in this summary process action . . . and the appellate court clerk

-2-

is directed not to accept, and to return, any further filings by [Dunbar] in this
matter.  All future stays are terminated pursuant to P.B. §§ 61-14 and 84-3

. . . .

Appendix to Amend. Compl. at 41.

Following the May 16, 2005 order, Dunbar attempted to file motions for reconsideration

with the appellate court.  Amend. Compl. ¶ 44.  He also filed a petition with the Connecticut

Supreme Court.  *Id.* at ¶ 45.  State Street Bank and Trust Company requested a execution from

the housing court clerk on July 23, 2005.  *Id.* at ¶ 54.

On August 4, 2005, Dunbar filed the instant suit.  He filed his amended complaint and

motions on September 7, 2005.  Dunbar filed a second motion for *ex parte* temporary restraining

order on September 13, 2005.[2]

## II.    Discussion

Dunbar alleges that the appellate court lacked jurisdiction to issue the May 16, 2005 order

and that the order violates his rights of equal protection under the Fourteenth Amendment and

due process under the Fifth Amendment, as well as his First Amendment right to petition the

government for a redress of grievances.  He alleges that the defendants are biased against him,

failed to consider the merits of his appeals, and conspired with others to deprive him of his

rights, have him evicted, and cover-up illegal conduct.  He also alleges that the appellate court is

---

[2] In addition to the facts alleged in the pleadings, I take judicial notice of an earlier federal
lawsuit that Dunbar filed in this court.  On November 18, 2004, I dismissed for failure to state a
claim his complaint against State Street Bank and Trust Company, Judge Barry Pinkus of
Superior Court Housing Session, the law firm Reiner Reiner & Bendett, State Marshal Joseph D.
Nardini, and Housing Clerk Susan Colasanto.  *See Dunbar v. State Street Bank and Trust Co. et
al.*, Ruling and Order, Case No. 3:04cv1166 (SRU) (doc. # 6).  I also take judicial notice of a
further, related action currently pending in Connecticut District Court.  *See Dunbar v. Colasanto,
et al.*, Case No. 3:05cv1234 (CFD).

retaliating against him for having filed a complaint with the Judicial Review Board.

With respect to relief, Dunbar seeks a temporary retraining order to maintain the *status quo*, enjoining and restraining the appellate court judges as well as court employees, in order to prevent his eviction.  He also seeks monetary damages from the defendant judges.

Accepting as true all factual allegations in Dunbar's complaint and construing it under the liberal standard afforded *pro se* submissions, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), there is no cognizable claim against the defendants.  The court is, thus, required to dismiss Dunbar's lawsuit.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (mandating that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted"); *Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000) ("dismissal for failure to state a claim is mandatory").

A.      *Rooker-Feldman* Doctrine

Dunbar has framed his federal lawsuit as a civil rights action and has sued the judges of the state appellate court that sanctioned him, not his opponent in the underlying case.  Nevertheless, he principally seeks a reversal of the state court ruling.

In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983), the Supreme Court held that federal district courts lack subject matter jurisdiction to review final state court judgments.  Under the Supreme Court's *Rooker-Feldman* doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (citing *Feldman*, 460 U.S. at 482

and *Rooker*, 263 U.S. at 416).  "[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings.  Review of such judgments may be had only in [the United States Supreme] Court."  *Feldman*, 460 U.S. at 482.

Earlier this year the Supreme Court discussed the *Rooker-Feldman* doctrine in order to clarify its contours and distinguish that jurisdictional doctrine from comity or abstention doctrines and preclusion law.  *See ExxonMobil Corp. v. Saudi Basic Industries Corp.*, 125 S. Ct. 1517 (2005).  The Court held that the *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Id.* at 1521-22.  Unlike *ExxonMobil*, however, in his federal suit, Dunbar seeks to overturn the state appellate court's order.  *Cf.* 125 S. Ct. at 1526-27 (noting that the plaintiff was not seeking to overturn the state-court judgment and that *Rooker-Feldman* did not divest the district court of concurrent jurisdiction).

Although Dunbar seeks, in effect, an interlocutory appeal of the state court ruling, not review of a final judgment, the district court, nevertheless, is without jurisdiction to hear such an appeal.  *See, e.g.*, *Campbell v. Greisberger*, 80 F.3d 703, 707 (2d Cir. 1996) ("It cannot be the meaning of *Rooker-Feldman* that, while the inferior federal courts are barred from reviewing final decisions of state courts, they are free to review interlocutory orders.").

Because the court does not have subject matter jurisdiction to consider appeals from state court judgments or interlocutory orders, Dunbar's complaint fails to state a claim upon which relief may be granted.

B.    Judicial Immunity

Additionally, the monetary relief sought from defendants – all state court judges – is barred by the doctrine of judicial immunity.  *See Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) ("Judges enjoy absolute immunity from personal liability for 'acts committed within their judicial jurisdiction.'").  The Supreme Court has held that "a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction."  *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (internal quotation marks and citation omitted).

Although Dunbar challenges the jurisdiction of the judges to sanction him and to issue their May 16, 2005 order, the actions of which he complains were acts committed within their judicial jurisdiction.  In *Stump*, the Court described the distinction between lack of jurisdiction and excess of jurisdiction with the following examples:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump*, 435 U.S. at 357, n.7 (citation omitted).  The state court judges' sanction of Dunbar and their order regarding future filings in the summary process proceeding (docket no. NHSP-074782) do not constitute conduct in the clear absence of jurisdiction.

Consequently, Dunbar's lawsuit is against defendants who are immune from the requested monetary relief, and he fails to state a claim upon which relief may be granted.

**III.    Conclusion**

The motions for a temporary restraining order and preliminary injunction (docs. # 5 and # 13) are DENIED.  The amended complaint (doc. # 8) is DISMISSED *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B).  The clerk is directed to enter judgment and close this case.

It is so ordered.

Dated at Bridgeport, Connecticut, this 21st day of September 2005.

   /s/ Stefan R. Underhill
              Stefan R. Underhill
              United States District Judge